Eugene V. HENSLEY, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 9832.

United States Court of Appeals
Tenth Circuit.

Dec. 27, 1968.

Rehearing Denied March 17, 1969.

See also, D.C., 257 F.Supp. 927.

Lester A. Klaus, Oklahoma City, Okl. (J. Howard Edmondson, Oklahoma City, Okl., was with him on the brief), for appellant.

John A. Babington, Asst. U. S. Atty. (John Quinn, U. S. Atty., was with him on the brief), for appellee.

Before LEWIS, SETH and HICKEY, Circuit Judges.

LEWIS, Circuit Judge.

Appellant, Eugene V. Hensley, was convicted after trial to a jury in the United States District Court for the District of New Mexico on four counts of income tax evasion in violation of 26 U.S.C. § 7201 and on four counts of making and subscribing false returns in violation of 26 U.S.C. § 7206(1). The counts were founded on the 1959 and 1960 returns of appellant and the appellant-controlled corporation, Ruidoso Racing Association.[1] The case against appellant was

---

1. *Count 1.* Eugene V. Hensley filed a false personal income tax return on April 15, 1960, in violation of 26 U.S.C. § 7201 for the year 1959; *Count 2.* Eugene V. Hensley filed a false personal income tax return on April 1, 1961, in violation of 26 U.S.C. § 7201 for the year 1960; *Count 3.* Eugene V. Hensley, as Secretary-Treasurer of Ruidoso Racing Association, Inc., a corporation, filed a false corporate income tax return on June 17, 1960, for the year 1959 in violation of 26 U.S.C. § 7201; *Count 4.* Eugene V. Hensley, as Secretary-Treasur-

proved by the "specific items" method in which over three hundred exhibits were introduced by the government. These exhibits, which for the most part were stipulated, together with the testimony of the corporation suppliers, were used to show that invoices which on their face appeared to be legitimate charges against the corporation were actually false invoices, solicited by appellant from the corporation suppliers in order to disguise payments made by the corporation to friends and relatives of appellant. The alleged fraud lies in the fact that such payments were constructive dividends to appellant and should have been reported by appellant as personal income and should not have been deducted by the corporation as corporation expenses.

Appellant pursuant to 28 U.S.C. § 1291 appeals the judgment reached below contending in summary that:

1. The verdict is not supported by sufficient competent evidence.

2. The court wrongfully denied appellant's request to examine the grand jury records, government investigative records, and failed to comply with the procedural compulsion of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, to determine the existence of exculpatory material in the government file.

3. The court erred in not dismissing counts V through VIII as premised upon the unconstitutionality of 26 U.S.C. § 7206(1).

4. The court erred in its instructions.

5. The court erred in not dismissing counts III and VII as barred by limitation pursuant to 26 U.S.C. §§ 6072, 6513 and 6531.

▮ Appellant's attack upon the sufficiency of the evidence is premised on two facets of the factual background of the government's investigation of appellant. The original investigation was begun in January 1961, and continued until April 1962, by Agent Spence. This agent's conduct, understated, was completely reprehensible and Spence's total unfitness was judicially determined some three months before the trial of the case at bar by his conviction for soliciting and accepting a bribe in an unrelated tax case. After April 1962, Special Agent Reynolds was assigned to the case and although for some time thereafter Spence continued to work with Reynolds the primary responsibility of investigating and preparing the government's case was charged to Reynolds. Reynolds' integrity is in no way questioned by appellant nor by the record. Appellant asserts that Spence's participation so taints the prosecution as to deny the application of due process. We do not agree.

There may be cases where the overall oppression and misconduct of investigative agents so shocks the judicial conscience by reflection in the record that a conviction is not based on an acceptable standard for the proper administration of justice. Perhaps Lenske v. United States, 9 Cir., 383 F.2d 20, is such a case. But certain it is that the misconduct or corruption of an investigator cannot serve, through occurrence alone, as an absolute baptism of criminal conduct in others. The government cannot gain advantage by its errant agents' conduct; neither can the prosecution of crime

er of Ruidoso Racing Association, Inc., a corporation, filed a false corporate income tax return on March 16, 1961, for the year 1960 in violation of 26 U.S.C § 7201; *Count 5.* Eugene V. Hensley subscribed and verified a false personal return on April 15, 1960, for the year 1959 in violation of 26 U.S.C. § 7206(1); *Count 6.* Eugene V. Hensley subscribed and verified a false personal income return on April 1, 1961, for the year 1960 in violation of 26 U.S.C. § 7206(1);

*Count 7.* Eugene V. Hensley, as Secretary-Treasurer of Ruidoso Racing Association, Inc., a corporation, subscribed and verified a false corporate income tax return on June 17, 1960, for the year 1959 in violation of 26 U.S.C. § 7206(1); *Count 8.* Eugene V. Hensley, as Secretary-Treasurer of Ruidoso Racing Association, Inc., a corporation, subscribed and verified a false corporate income tax return on March 16, 1961, for the year 1960 in violation of 26 U.S.C. § 7206(1).

grind to a standstill because of such conduct. And in the case at bar, as we have indicated, the government here wholly relied upon the testimony of the company's suppliers and company documents which clearly and convincingly showed that the appellant-controlled corporation bestowed gratuities on friends and relatives of appellant and unlawfully deducted the amounts as legitimate business expenses to the company and which were not reflected as income to appellant. This evidence was so self-sufficient that neither Spence nor Special Agent Reynolds testified at the trial.

■■ Appellant's second argument directed against the sufficiency of competent evidence to support conviction is projected from a record silent as to any warnings given by the investigating agents[2] that might be pertinent under the constitutional compulsion set out in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974. Since neither this argument nor any objection to the admission of evidence that might premise the contention was made in the court below the government suggests that original appellate consideration of the issue is not proper. We disagree with the government. It is clear that "even constitutional objections may be waived by a failure to raise them at a proper time," Curtis Publish-

ing Co. v. Butts, 388 U.S. 130, 143, 87 S.Ct. 1975, 1985, 18 L.Ed.2d 1094; however one cannot effectively waive an unknown right and since the application of Miranda to tax investigations had not then been established as a right it cannot be said that appellant's failure to object to the introduction of the evidence amounted to a waiver of a known constitutional right. Grosso v. United States, 390 U.S. 62, 71, 88 S.Ct. 709, 19 L.Ed.2d 906; Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094; Greenwood v. United States, 4 Cir., 392 F.2d 558, 559. Accordingly, the failure of appellant to raise an objection below cannot be deemed fatal for purposes of our review.

■ To substantiate his claimed right to the Miranda warnings appellant now relies on Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381. Although it is now clear that Miranda does apply to tax investigations the primary thrust of the rule has not been broadened beyond that of prohibition (exclusionary rule) aimed at statements elicited during a custodial interrogation of the accused. See Parson v. United States, 10 Cir., 387 F.2d 944.[3] Appellant was not questioned while in custody. However, appellant's reliance upon Mathis must fail for another and more certain reason. The only evidence

2. The current instructions to agents through I.R.S. directives were not then in effect. These instructions now require:
   "(A) On initial contact with the taxpayer the special agent is to produce his credentials and state: 'As a special agent, I have the function of investigating the possibility of criminal tax fraud.'
   (B) If the potential criminal aspects of the matter are not resolved by preliminary inquiries and further investigation becomes necessary, the special agent is required to advise the taxpayer of his constitutional rights to remain silent and to retain counsel.
   (C) If it becomes necessary to take a person into custody, special agents must give a comprehensive statement of rights before any interrogation. This statement warns a person in custody that he may remain silent and that anything he says

may be used against him. He is also told that he has the right to counsel before making a statement or answering any questions, and that if he cannot afford counsel he can have one appointed by the U. S. Commissioner."

3. Other circuits are in accord: United States v. Squeri, 2 Cir., 398 F.2d 785; United States v. Mackiewicz, 2 Cir., 401 F.2d 219, cert. denied, 393 U.S. 923, 89 S.Ct. 253, 21 L.Ed.2d 258, October 28, 1968; Taglianetti v. United States, 1 Cir., 398 F.2d 558; Frohmann v. United States, 8 Cir., 380 F.2d 832, cert. denied, 389 U.S. 976, 88 S.Ct. 478, 19 L.Ed.2d 469; Kohatsu v. United States, 9 Cir., 351 F.2d 898, cert. denied, 384 U.S. 1011, 86 S.Ct. 1915, 16 L.Ed.2d 1017. But see United States v. Wainwright, D.C., 284 F.Supp. 129, and United States v. Turzynski, D.C., 268 F.Supp. 847.

obtained from the appellant which was introduced at the trial was corporate records and a natural person may be required to furnish corporate records irrespective of the fact that such records might tend to incriminate him, Communist Party of United States v. United States, 127 U.S.App.D.C. 389, 384 F.2d 957; Hair Industry, Ltd. v. United States, 2 Cir., 340 F.2d 510, cert. denied, 381 U.S. 950, 85 S.Ct. 1804, 14 L.Ed.2d 724; Imperial Meat Co. v. United States, 10 Cir., 316 F.2d 435, cert. denied, 375 U.S. 820, 84 S.Ct. 57, 11 L.Ed.2d 54. It follows that no evidence was used by the prosecution which an accused, fully aware of his constitutional rights, could have prevented the government from obtaining or introducing; accordingly we hold that appellant was not deprived of any constitutional right.

█ █ The court did not err in refusing appellant access to the grand jury minutes for his claim of a particularized need to establish the corruption of Agent Spence is without merit. Although "disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice," Dennis v. United States, 384 U.S. 855, 870, 86 S.Ct. 1840, 1849, 16 L.Ed.2d 973, the right to inspection of the grand jury minutes by the defense under Rule 6(e), Fed.R.Crim.P., and the Constitution is not an absolute right. Spence did not testify before the grand jury or at the trial. Appellant's indictment and conviction were based on wrongs revealed in false and for the most part stipulated invoices and the minutes could not be an aid to change the wrongs so revealed. And we note that the trial court did inspect the grand jury minutes in camera

for although such a practice is not a substitute for examination by defense counsel where a need is shown, it does show the court's concern in insuring that defendant be given a fair trial.

█ Next, appellant asserts that the trial court abused due process under the dictates of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, by refusing to require the government to produce such exculpatory material as might be contained in its files and records. This broad claim, however, is projected only from a procedural error of the trial court, recognized as such by that court, and has no substantive merit. The trial court did not before trial or during its course examine all of the files and records of the government to determine whether exculpatory material was contained therein to which appellant should be given access. The court did make such examination before the denial of a motion for new trial and found the government records contained nothing of an exculpatory nature. Our own examination of this material confirms the trial court's determination and thus appellant has not been prejudiced by the faulty procedure.

█ Although appellant's attack upon the constitutionality of 26 U.S.C. § 7206(1) [4] is more general than specific [5] it apparently scatters from the premise that the statute punishes for perjury without providing for the varying procedural and substantive burdens existent in a prosecution for the traditional crime of perjury. We must deny the premise for appellant was here accused of a fraud upon the United States and not for the violation of an oath as provided by 18 U.S.C. § 1621. The two cited statutes are not in conflict

4. § 7206. "any person who—

(1) * * * Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter; * * *

* * * * *

shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $5,000, or imprisoned not more than 3 years, or both, together with the costs of prosecution."

5. The trial court thought this claim to be so completely without merit as to require no discussion. 257 F.Supp. 987.

and neither preempts the other in any way. Certainly there is no basic unconstitutionality in a statute that punishes a criminal fraud against the government without the precedent existence of a formal oath. Nor is § 7206(1) in conflict nor duplicitous with 26 U.S.C. § 7201.[6] When, as here, both statutes may be violated by the act of filing a single return there are no overtones of double jeopardy when prosecuted by a single indictment. Under different factual situations than we here consider each of these sections might be violated without a violation of the other. Congress can make separate steps in a prohibited transaction separate offenses. Taylor v. United States, 9 Cir., 179 F.2d 640, and no court has found duplicity in the subject sections. See United States v. Jaben, D.C., 225 F.Supp. 47, 49. We hold § 7206(1) to be constitutional and not duplicitous with § 7201.

The remaining issues urged by appellant need but little discussion. We are asked to reconsider and re-evaluate this court's decisions pertaining to the "Allen" charge, here given in rather a mild form. We see no need to so do and adhere to our views as last expressed by Chief Judge Murrah in Burrup v. United States, 10 Cir., 371 F.2d 556, cert. denied, 386 U.S. 1034, 87 S.Ct. 1485, 18 L.Ed.2d 596. Nor does the contention that the court erred in failing to give evidentiary instructions have merit. Although both parties submitted proposed evidentiary instructions no objection was taken when the requests were denied, Rule 30, Fed. R.Crim.P., and the record indicates affirmative approval of the trial court's action. Said appellant's counsel:

> "If the Court is going to give *no* evidentiary instructions, we have no objections to the instructions that the Court proposes." (emphasis added)

Although particular emphasis was set out in the appellant's original brief to

the effect that Counts III and VII were barred by limitation the Supreme Court decision in United States v. Habig, 390 U.S. 222, 88 S.Ct. 926, 19 L.Ed.2d 1055, had not then been made. That decision is adverse to appellant and controlling on the issue.

Affirmed.