**UNITED STATES of America,
Appellee,**

v.

**Joseph T. JALBERT, Defendant,
Appellant.**

**No. 74–1125.**

United States Court of Appeals,
First Circuit.

Argued Oct. 7, 1974.

Decided Oct. 31, 1974.

John M. Doukas, Boston, Mass., with whom Robert W. Harrington, Boston, Mass., was on brief, for appellant.

Robert E. Lindsay, Atty., Tax Div., Dept. of Justice, with whom Scott P. Crampton, Asst. Atty. Gen., William J. Deachman, U. S. Atty., Washington, D. C., Jeremiah T. O'Sullivan, Sp. Atty., Dept. of Justice, Boston, Mass., and Gilbert E. Andrews, Atty. Tax Div., Dept. of Justice, Washington, D. C., were on brief, for appellee.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

ALDRICH, Senior Circuit Judge.

Defendant Jalbert, a college graduate who had also had one year in law school and had been a special agent of the F. B.I., became a Dover, New Hampshire businessman with interests in several enterprises. He was convicted, after a jury trial, of filing false income tax returns in violation of 26 U.S.C. § 7201 for the years 1968, 1969 and 1970. Substantial unreported items were fully established, largely by direct evidence. The returns, signed by the defendant, were prepared by others on the basis of information supplied by defendant, and the omissions in the returns were, or could be found to be, due to defendant, not to any error by the preparers. Defendant's "basic defense," to quote his brief, was that "during the years in question he was a 'chronic alcoholic' and unable to form the requisite criminal intent." Cf. Hopt v. People, 1881, 104 U.S. 631, 634, 26 L.Ed. 873; Kane v. United States, 9 Cir., 1968, 399 F.2d 730, 736, cert. denied, 393 U.S. 1057, 89 S.Ct. 698, 21 L.Ed.2d 699; Tao, Alcoholism as a Defense to Crime, 1969, 45 Notre Dame L. 68, 72–74.

■ Defense witnesses offered extensive evidence, including medical testimony, of defendant's drinking, and of its incapacitating effect upon his ability to manage his business affairs. In addition, defendant's medical expert testified that alcoholics do things without knowledge, and without recollection afterwards. "I don't believe they can have criminal intent." In rebuttal, the government did not deny defendant's heavy drinking, but did introduce substantial evidence that contradicted his assertion that he lacked business acumen.

Defendant's contention that this testimony was not proper rebuttal, but should have been offered in chief to counter an anticipated defense, is too frivolous to require comment. Cf. Goldsby v. United States, 1895, 160 U.S. 70, 74, 76–77, 16 S.Ct. 216, 40 L.Ed. 343; United States v. Fench, 1972, 152 U.S.App.D.C. 325, 470 F.2d 1234, 1240–1241, cert. denied sub nom. Blackwell v. United States, 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271. Even if the question were closer, we would defer to the discretion of the trial court. See Goldsby, ante, 160 U.S. at 74, 16 S.Ct. 216; United States v. Montgomery, 3 Cir., 1942, 126 F.2d 151, 153, cert. denied, 316 U.S. 681, 62 S.Ct. 1268, 86 L. Ed. 1754. It is of no consequence that the government produced some of its rebuttal evidence by recalling its original witnesses.

Equally frivolous is defendant's claim that the evidence did not warrant a conviction. It is true that the government offered no medical expert to contradict defendant's expert. However, the testimony of defendant's expert itself admits of the possibility that even a chronic alcoholic may function well at times. And far more persuasive in this context than expert testimony, cf. Dusky v. United States, 8 Cir., 1961, 295 F.2d 743, 754, cert. denied, 368 U.S. 998, 82 S.Ct. 625, 7 L.Ed.2d 536, were the witnesses who observed defendant's actual conduct. They amply supported a jury finding that defendant was capable of conducting his business affairs despite his alcoholic condition. Cf. United States v. Bishop, 1 Cir., 1972, 469 F.2d 1337, 1347.

■■ Nor need we spend time on defendant's claim that the court erred in permitting the government to introduce summary charts in evidence. Basically, defendant's claim is that charts are, per se, prejudicial simplifications. The use of charts and summaries is not invalid

per se. *See* Gordon v. United States, 5 Cir., 1971, 438 F.2d 858, 876 & nn. 63, 64, cert denied, 404 U.S. 828, 92 S.Ct. 63, 30 L.Ed.2d 56. Whether the charts in this case were so prejudicial as to warrant their suppression is a matter within the discretion of the trial court, absent its gross abuse. *Gordon, ante,* 438 F.2d at 876; McGarry v. United States, 1 Cir., 1967, 388 F.2d 862, 868, cert. denied, 394 U.S. 921, 89 S.Ct. 1178, 22 L.Ed.2d 455.

If the particular charts were misleading or prejudicial, their introduction might signal error. On this the defendant, as appellant, at a minimum has the burden of setting forth the alleged deficiencies in specific terms that we can follow, and that the government can respond to, especially in light of the safeguards with which the charts were presented in this case. *Cf.* United States v. Johnson, 1943, 319 U.S. 503, 519, 63 S.Ct. 1233, 87 L.Ed. 1546; *Gordon, ante,* 438 F.2d at 876–877. Defendant does not meet that burden by the bare assertion that the charts "among other things contained improper and prejudicial captions and descriptions (Tr. 406, 414). . . ." Not only does the brief point out nothing, but the record on page 406 contains a simple exception with no ground stated, and on page 414 not even that. The appeal in this respect is not merely frivolous; it is meretricious.

The only matter that calls for any extended discussion is defendant's contention that the court improperly prevented his introduction of character evidence. During the government's case in chief defendant, having in cross-examination of a previous witness brought out that defendant was a heavy drinker, asked another government witness whether he knew defendant's "general reputation in the community with respect to conducting business." The court sustained an objection and added that it would not allow the question even as part of defendant's case. Defendant made no offer of proof.

■ Thereafter, as part of his case, defendant asked a witness, "[D]id you know his reputation in the business community during this time?" On the court's sustaining the government's objection, defendant's counsel stated,

"Your Honor, I would like to also (sic) utilize this witness, to avoid repetition, as a character witness."

. . . . . .

The Court: "Character isn't in issue as yet."

Mr. Doukas: "No, but I think we have a right to offer character testimony, Your Honor."

The Court: "I don't think you do now."

Mr. Doukas: "Well, all right then, I will withdraw the question. I don't want to bring him back."[1]

■ On this appeal defendant conceded that these questions were not properly framed to call for admissible character testimony. Even if they sought to elicit evidence of defendant's honesty and integrity, such questions too narrowly focused on defendant's business associations instead of the community at large, and thus defendant's concession is well taken. *Cf.* Michelson v. United States, 1948, 335 U.S. 469, 480–481 n. 17, 69 S.Ct. 213; Williams v. United States, 1897, 168 U.S. 382, 397, 18 S.Ct. 92, 42 L.Ed. 509. More likely, however, these questions were directed to support defendant's "basic defense" that during the period in question he was unable to

---

1. At a later point defendant asked a witness, Q. "Could you tell us, testify with respect to the type of businessman he was, that is, you know what I mean, trying to cheat anybody, his employees, or cheat the business people he dealt with?"

Since this question called not for evidence of defendant's reputation but for the witness' personal opinion, it could not have elicited proper character evidence, and the court was right to exclude it. *See* Michelson v. United States, 1948, 335 U.S. 469, 477, 69 S.Ct. 213, 93 L.Ed. 168.

conduct his business, but character evidence is admissible only to show a party's general renown for honesty and lawfulness, and would not properly encompass his reputation as a disfunctional alcoholic. *Cf. Michelson,* ante, 335 U.S. at 476–477, 69 S.Ct. 213. In this respect the effects of defendant's condition must be catalogued through evidence of his specific acts, not by proof of reputation.

■ Defendant's present claim is that he was proposing to go on and introduce character evidence in proper form, but was stopped by the court. This claim must fail for several reasons. First, the record shows only that the court postponed the introduction of this evidence until a later point in the trial. It was defendant's own decision to keep it out entirely. *Cf.* Malatkofski v. United States, 1 Cir., 1950, 179 F.2d 905, 915. Secondly, we might acknowledge that the court's quoted remark suggested that it did not consider character evidence admissible except to restore defendant's credibility after he had testified and been impeached as a witness. If the court believed that, it was in error; whatever may be its weight, character evidence is normally admissible per se in aid of a defendant, especially one prosecuted for a claim involving fraudulent intent. *See Michelson,* ante, 335 U.S. at 476, 69 S.Ct. 213; United States v. Torbert, 9 Cir., 1974, 496 F.2d 154, 158; Carnley v. United States, 5 Cir., 1960, 274 F.2d 68. However, if the court may be thought to have been of that opinion, it is still incumbent upon a party to make clear his own position. Defendant not only did not object, but withdrew the question. Thereafter defendant not only failed to pose a question substantively appropriate, but at no point made an offer of proof.

Defendant seeks to cure this manifestly defective record by asserting orally that the court ruled more directly, at an unreported conference, that character evidence would not be admissible at any point during the trial. It is elementary that such a proffer is impermissible; defendant's obligation was to correct the record in the district court. His present action is doubly insupportable because it appears, through a letter from the court offered to us by agreement, that defendant did institute steps to correct the record, and was notified by the court (quite correctly) how to proceed, and then failed to do so.

■■ Defendant did not stop there. Counsel now writes that following our criticism of the record at oral argument he corresponded and conversed with the district court. Counsel should not have done this, and regretfully, we must say that the court should not have communicated with him. From the standpoint of an appeal, this was an entirely inappropriate procedure. We do not take appeals on the basis of informal, not to mention ex parte, correspondence.

We may add, further, that even if we were to make from his submission the most favorable possible factual assumptions, it would appear that not only is defendant complaining of a matter of which he made no record, but of which he must be taken to have known he was making no record. This is not the way to save rights. Nor can we appraise, merely from the circumstance that defendant was, assumedly, prevented from introducing character evidence, what the net result of such embarkation would have been. New trials, particularly where the case was otherwise fully and fairly tried, are not to be so easily obtained. *Cf.* Silber v. United States, 1962, 370 U.S. 717, 718, 82 S.Ct. 1287, 8 L.Ed.2d 798 (per curiam); United States v. Mitchell, 1 Cir., 1970, 432 F.2d 354, 355–356, cert. denied, 401 U.S. 910, 91 S.Ct. 872, 27 L.Ed.2d 808; Dichner v. United States, 1 Cir., 1965, 348 F.2d 167, 168; Lash v. United States, 1 Cir., 1955, 221 F.2d 237, 240, cert. denied, 350 U.S. 826, 76 S.Ct. 55, 100 L.Ed. 738.

Affirmed.