UNITED STATES of America, Appellee,

v.

**EDGEWOOD HEALTH CARE CENTER, INC., Defendant, Appellant.**

No. 78–1561.

United States Court of Appeals, First Circuit.

Argued Sept. 5, 1979.

Decided Oct. 25, 1979.

Craig F. Evans, with whom Joseph Michael and Michael, Jones & Wensley, Rochester, N. H., were on brief, for defendant, appellant.

Steven M. Gordon, Asst. U. S. Attorney, with whom William H. Shaheen, U. S. Atty., Concord, N. H., was on brief, for appellee.

Before COFFIN, Chief Judge, KUNZIG,* Judge, U. S. Court of Claims, and CAMP-BELL, Circuit Judge.

LEVIN H. CAMPBELL, Circuit Judge.

This appeal taken by Edgewood Health Care Center, Inc. (Edgewood) is from its conviction on multiple counts of mail fraud in violation of 18 U.S.C. §§ 1341 and 2. Edgewood, a nursing home, and Glen V.

* Sitting by designation.

Pomerleau, its administrator, were jointly charged, tried by jury, and convicted, for having participated in a scheme to obtain excessive Medicare-Medicaid reimbursements. The scheme, in essence, included Edgewood's misrepresentations that certain of its patients were housed in the West Wing, a certified Skilled Nursing Facility, when in fact they were maintained in the East Wing, an Intermediate Care Facility. Since allowable reimbursement for East Wing patients was non-existent under the Medicare program and at a considerably lower rate under the Medicaid program, Edgewood illegally benefitted as a result of its misrepresentations.

 Edgewood presents two arguments on appeal, neither of which we find to have any substance. It first contends that the district court erred in denying a defense motion for mistrial based on the alleged prejudice caused by a government witness, a handwriting expert, who identified defendant Pomerleau's handwriting on a document later refused admittance into evidence because confusing and irrelevant. Edgewood argues that the expert's identification of Pomerleau's handwriting coupled with impressive reference to his own expertise and a handwriting comparison chart, somehow prejudiced the jury against it.

The short answer to this contention is that the defense did not register a timely objection to the expert's testimony nor, after the document itself was refused admittance into evidence, did the defense move to strike the testimony or for curative instructions. The motion for mistrial came only later, after the fact. We have said that only the most palpable of errors will be noticed on appeal when no objection has been raised below. *Stack v. United States*, 368 F.2d 788, 790 (1st Cir. 1966). *See* Fed. R.Crim.P. 51 and 52. Given the very substantial evidence indicating that Edgewood submitted improper Medicare-Medicaid charges and that this was done knowingly by the personnel responsible for Edgewood's affairs, we do not believe that the expert's testimony was substantially prejudicial nor, indeed, that the conduct of the trial by the district judge left anything to be desired in the circumstances. A motion for mistrial is addressed to the sound discretion of the district court. *United States v. Sclamo*, 578 F.2d 888, 891 (1st Cir. 1978). There was no abuse here.

 Edgewood makes a second argument based upon a supposed affirmative duty of the government to have reviewed all possibly relevant records in the possession of agencies involved in the present investigation and, thereafter, to have reported to appellant concerning the existence of possible exculpatory evidence. The organizations in question include the United States Department of Health, Education and Welfare, the New Hampshire Department of Health and Welfare, and the Vermont-New Hampshire office of Blue Cross/Blue Shield. No sufficient request for such review was ever made before or during trial, and Edgewood concedes that the prosecution did not violate specific anti-withholding requirements.[1] It appears, indeed, that the United States Attorney cooperated to

1. *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), holding that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment; the Jenck's Act, 18 U.S.C. § 3500, requiring the court upon motion after a witness has testified for the United States to order the government to produce any statement of the witness in the possession of the United States relating to the subject matter of the witness' testimony; Fed. R.Crim.P. 16(a)(1)(C) requiring the government to permit the defendant to inspect and copy papers and documents in the possession, custody or control of the government, material to the preparation of the defense or intended for use by the government in its case in chief.

Appellant contends that the Postal Inspector who originally seized certain documents involved in the present case only presented the U.S. Attorney with those documents "which [he] felt proved the case." Appellant fails to state that before trial the Postal Inspector returned to the defendants all the seized papers not given to the U.S. Attorney; there is nothing whatever to suggest that documents useful to the defense were hidden from it. From the documents he retained, the U.S. Attorney not only provided defendants with several items that were helpful to them, but made the remainder available for their inspection.

give defendants access to the voluminous materials in his possession, and that agency records were accessible to the defense, or would have been made so upon proper request. Nonetheless, Edgewood puts forward the expansive proposition that the prosecution was obliged, on its own initiative, to search all official or semi-official files and materials in any way related to appellant or this action for exculpatory information which, in appellant's words, "may or may not have existed." Appellant argues that its resources would have been exhausted and misdirected had it attempted to review these same materials. We are asked to rectify what is said to be an inequality in available investigative resources and time for preparation.

Edgewood has cited, and we have found, no authority for placing such a duty on the government in these circumstances. The cases relied upon by appellant involve a prosecutor's willful refusal or negligent failure to disclose particular information vital to the defense. Here there is no suggestion of such misbehavior, nor of bad faith, nor of any attempt to suppress information useful to the defense. Appellant points to no exculpatory evidence that the prosecution failed to disclose or which an adequate investigation might have revealed. Appellant simply insists that the supposedly vast resources and the large number of trained personnel available to the prosecutor should have been utilized for Edgewood's benefit to facilitate a review of all possibly relevant records held by government or government-regulated agencies. This position goes well beyond any requirements of the law.

*The judgment of the district court is affirmed.*